Please be seated. Please call the case. 3-12-0011 consolidated 3-12-00516 and 3-12-00752 Nito Machinery, Inc. v. Bank One N.A. Please proceed, counsel. Thank you, Justice. Justice Carter, Justice Holbrook, Justice O'Brien. In the three years since the first appeal, Deborah May is now in bankruptcy. So what remains is the corporation, Manitoba Machinery, as you saw in our change in briefing schedule. The first case came up. You reversed the dismissal for failure to state a cause of action and a remand. The material facts that were actually produced in the proof on summary judgment are essentially unchanged. Bank One's lawyer did file a false affidavit of publication in the foreclosure action. And, of course, this is a conversion action for destruction of the personal property contained in a foreclosed realty premises. He said that a diligent search, and, of course, the sheriff's return says that May is now living in Milford, Illinois. That was May 8, 2001. One month later, Bank One repossesses cars there. There was a suggestion in the record by Bank One that, well, you're talking to a lending service agent. And they listed another address in Watsika. But the follow-up shows that they gave them at Vanna, the servicing agent, they gave them both addresses. So they clearly knew where they were, the servicing agent for the mortgage did. So there was no excuse for not serving them. In the first appeal, the court held a tribal issue. The fact existed on whether the Mays abandoned the property. And that's at 24101 North Tanya Court in Manitou, which the clerk doesn't know. Justice Holdridge may know of Manitou. It's a small town off Pekin. And the conversion, with all due respect to Judge Mackey, was proven on Bank One's motion for summary judgment. Ralph demanded Devonshire Realty return the personal property to him. Devonshire referred him to Cadillus. He talked with the Cadillus assistant, Kate McKay, on April 18, 2001. He told her about the personal property located on the foreclosed premises, demanded its return. Then McKay told, there's no question about Bank One knowing, because McKay testified she called Bank One and told Bob Bradley and Bank One about this. Immediately after, she also told Devonshire Realty. On April 18, 2001, undisputedly, Devonshire had the property and had it, the personal property of Manitou and the Mays, but that's irrelevant to Mays now. The Manitous were the income was anyway, those computers. They had it and then destroyed it in June of 2001. A conversion occurred. It was the Mays property. Bank One's agent had it. There was plenty of opportunity to retrieve the property, wasn't there? Not until they freed it. I mean, he asked for the property and they said you've got to get a lawyer to get it. Were there some negotiations? No, none. No negotiations? None. Devonshire says there's an altercation, but Devonshire never gives it to him. I mean, this is a theft. When you have property that isn't your own and the owner says I want my property back, you give it to him. It's that simple. I mean, you don't negotiate. I mean, it's their property. Here it is. Come get it. If there was some disagreement between the realtor and Ralph May, of course the sheriff's available to oversee it. Come get your property. So there wasn't any negotiation. He made a demand in the response of the lawyers and Bank One because they never did anything, was you've got to hire a lawyer to get it back. Well, you don't have to hire a lawyer to get it back. If somebody's got my car in their possession or they foreclosed realty, they've got to give it to me. And it's a theft if they don't. Now, all Bank One had to do is instruct its agent to give him his property or the lawyers to do that. So you look at the elements. Every one of them are present. You had the demand. You had the immediate right to presentation. Bank One was holding it. It was unauthorized as soon as he demanded it, and he didn't return it. Very simple case. You don't know how summary judgment can be sustained for Bank One. Judge DeVicke said somehow Manitoba Mamey's abandoned it back in November. Well, wait a minute. It's every debtor's right to insist on service of process in a foreclosure proceeding or any free proceeding. They were entitled to keep that property until February 3rd when the order of judicial sale came about. It's possessing of it. Now, there was some question at the first case about, well, what's the duties afterwards? Well, we don't need to get in there because on April 18th they clearly had it. If they destroyed it on February or March, justices, I would say that there might be some questions about what was reasonable and whatever, but they had it. All you got to do is turn it over. Now, next is the lawyers. Judge DeVicke was concerned about, well, hey, they just told him to get a lawyer. Well, I'm sorry. If you have my car and won't give it back to me, I don't need a lawyer to get it. You have to give it back to me or you're committing a theft. So what is the lawyer's duties that this court held in the first that there was a question of fact that existed? They had a duty to notify. Don't file a false affidavit of publication. When you've got a sheriff's return that says now living in Milford, find him. Then you don't have these problems. Two, if someone calls you and the real estate agent on the foreclosed property taken over by your client to sell it, says, hey, somebody's demanding their personal property back to its owner. What do we do? It's not a very tough duty. It's not your property. Give it to them. Cadillus did nothing. And Devonshire really destroyed it. There was some question as to the theory, the technicalities. The motion did not challenge the acting in concert part of the allegations, nor that the allegations which you sustained in the first appeal that the realtor would follow Cadillus' direction. So summary judgment should have been denied right there. There was a question of fact on agency because clearly why is Devonshire referring Ralph May to Cadillus if there's no relationship between them? And why are they calling Devonshire back? Judge DeBicke faulted me for not taking depositions earlier. Well, there was a prior action filed in the involuntary dismissal. This was a new action. I didn't know Ernest Cadillus was a witness when they came up with that affidavit. He didn't allow me to depose him. And then, amazingly, Ralph May found a January 19, 2004, email, went back and found it from Devonshire saying that everything we did was according to what bank loan lawyers told us. So agency was proven. He said, well, you're too late on that. And with respect to the judge, he left private practice before email became ubiquitous among us in private practice. I assume it is probably with the court judges now, too. And I'll tell you, there's no way I could ever find anything in 2004 in my computer. It's gone. Probably couldn't find something back in 2010. But somehow he actually found it in an old system and kept it in records. And he actually found it. Well, when we came up with that, it shows clearly that Cadillus and Frank Hernandez, the affidavits he relied on for no agency, were not telling the truth. Because Devonshire's other agent, Nancy Cox, said, oh, yeah, yeah, we did everything Cadillus said about this personal property. So you did not impose a great duty on lawyers. Don't file false affidavits. You never get in this situation. And if the client calls, if the owner calls on a foreclosure you did, you affirmed and client said, give them back their property. They own it. Otherwise, you're, I don't want to get into the criminal law, but you certainly are participating in a theft, and certainly affectionately. And that's what happened here. So it's a straightforward case. We went through all sorts of permutations below and all the issues which I addressed. But the property existed on April 18th. He made the demand on everybody he knew to give him the property back, and they did. That is conversion. There's nothing else. Unless there's any further questions. Thank you, Counsel. Counsel. Good morning. May it please the Court. My name is Tom Wilson. I represent Bank One, which is today JPMorgan Chase. Counsel. I have the dubious distinction, Your Honor, of having lived with this case since it was first filed back in December of 2001. I've been Bank One's counsel since that date. And I want to place a little bit of history on what brings us here today. When the case was refiled in Peoria County Circuit Court, the trial judge at that time, Judge Vestma, dismissed it on a 2-6-15 motion. And it was appealed here by the plaintiffs. Was it a 2-6-15 or 6-19? It was a combination, Your Honor. For purposes of my argument, the 6-15 motion was one where the argument was that they had abandoned the personal property. They'd left it in the property after it was foreclosed and after possession was transferred. And we cited the cases both from foreclosure context as well as the landlord-tenant law that if you leave your property in the real estate after your right to possession has terminated, you're deemed to have abandoned it. The plaintiffs argued in seeking reversal from this court that they could not have abandoned their property because they had no knowledge or notice of the foreclosure. And that we have cited in our brief, Your Honor. That was page 6 of the appellant's brief in the original pleading. And that also, you can find it throughout this court's first opinion, and it makes sense. Of course, if you don't know that your house is in foreclosure, why would you go get your stuff? If I have property in Florida and I spend the summers in central Illinois and it's being foreclosed on and I don't know it, why would I clean it up? That was not true. When we went back to the circuit court, we were able to establish through a summary judgment motion based on discovery that was taken in 2003 and 2004 as I was preparing to try the case over in Mason County. The plaintiffs had absolute actual knowledge of the foreclosure. They knew about it from the middle of 2000 forward. They knew when the foreclosure sale was set. They knew the property was sold. There is absolutely no dispute. They had actual knowledge. That brings us back to the general rule. They need to go get their stuff because the Illinois Mortgage Foreclosure Law specifically provides this 30-day window from sale of the real estate and confirmation until possession is transferred. Obviously, the purpose of that 30-day window is go get your stuff. Remove yourself and your possessions from the property. Now, the plaintiffs argue in this case, and they've argued from the beginning this argument about a, quote, due diligence to try to locate Mrs. May back in Mason County, and I believe when counsel refers to Bank One's lawyer filing this, he's not referring to me. He's referring to the foreclosure counsel. The point is that... That's Cordellis. That was a Cordellis attorney who was named and never served in this case. I believe that was Mr. Donahue, Your Honor. The point on the affidavit is really twofold. First, personal service on Mrs. May for the purpose of rendering an actual personal judgment for the deficiency is not the standard for purposes of abandonment of the personal property. Actual knowledge of the foreclosure and the need to remove your property is. Second, Mrs. May, in the foreclosure case, actually filed a post-judgment motion represented by counsel raising these issues about, hey, you could have done a better job to find me had you done a more thorough search. Confronted with the law and the facts that at that point in time, it was December of 2001 when she filed that, almost a year after the sale, and the sale of the property by Bank One to a third-party bona fide purchaser, she withdrew her motion attacking the affidavit and the service by publication. She withdrew it in Mason County. Now, 12 years later, her corporation is still arguing that somehow this, quote, false affidavit, which is established in the record, was not false at all. There was a diligent search for her, and a private investigator, in fact, was hired by Koudelis to try to find her. It is completely irrelevant to the issue before this court today, and that is that contrary to what she argued to obtain reversal originally in this court, she had actual knowledge of the foreclosure. And surprisingly, when we went back to the trial court and we made that argument on our summary judgment and put all that evidence in front of Judge Dubicki, they've never said a word about it. They've never said, well, why is it you previously argued no notice? We're still hearing the same arguments about a, quote, false affidavit. The point is they had more than simply appropriate notice. They had actual notice in order to remove their stuff from this property, and they didn't do it. Therefore, the general rule applies in this 12-year travail should finally come to an end. And therefore, I would ask the court to affirm the judgment in favor of Bank 1, and I will yield any time I have remaining of my seven and a half minutes to co-counsel unless there are any questions. And that's why you think that they had ample opportunity to retrieve the property. Absolutely. They had, and by their own testimony in their depositions, they admit they had knowledge, and they produced the written documents telling them this loan is in foreclosure. No dispute about that at all on this record. Thank you. Thank you. Good morning, Your Honors. Good morning. My name is Natalie Thompson, and I represent Cadillac & Associates. Cadillac & Associates were the attorneys for Bank 1 in handling the foreclosure. I wanted to first straighten out a few factual mischaracterizations that have been made in the appellant's brief and argument. For starters, the plaintiffs have alleged that there was this referral by Devin Chirildi to Cadillac. If you go back and look at the deposition testimony of Ralph May and of Kate McKay, who is the representative at Cadillac that Mr. May spoke to, you will see that there was no such referral. What Ralph May actually testifies to is that his daughter gave him some sort of foreclosure documents. He sees Cadillac & Associates' name on the bottom of these documents, calls Cadillac. The next day, he calls Frank Hernandez at Devin Chirildi. Then he says that Frank Hernandez tells him to call Tom Kelly, Bank 1's attorneys, who is not Cadillac. All of this referral over and over again, over 15 times in the appellant's brief, they reference this referral as to why there's this agency relationship here between Cadillac and Devin Chirildi, when in fact this referral did not take place. The evidence shows completely that this referral did not take place. It's all just either a misunderstanding or a mischaracterization of the deposition testimony. McKay also, the appellants have stated that then McKay, who was the Cadillac representative, called Devin Chirildi and told them about this demand from Ralph May, and none of that was testified to either. What Ms. McKay actually said was that, basically, she answered a call from Ralph May. He told her his story. She told him the property was foreclosed on, and unless there was a formal motion, Cadillac wasn't going to respond. They didn't have the property. They had no control of the property. She said she didn't know the broker, but that Mr. May's contentions that he was destroying the property, she didn't think would be true, but she didn't know the broker. She then talks to her supervisor, possibly talks to one of the attorneys at Cadillac, she doesn't remember, and then she and her supervisor call Devin Chirildi only to get a sense of what is going on. There's no giving direction of what they should be doing with this property. I know that counsel for the appellants said that if Devin Chirildi called Cadillac and asked what do we do, it should have been a simple answer. Well, maybe that's true, but Devin Chirildi didn't call Cadillac. There is an affidavit from Frank Hernandez, who is the listing agent at Devin Chirildi. He said he had no contact with Cadillac prior to the cleaning out. He had no direction or supervision from Cadillac. He was not an independent agent or an agent of Cadillac. Rather, he was an independent agent of Bank One. Likewise, Ernest Cadillac's affidavit said that they did not hire, retain, or contract with Devin Chirildi and that they had no control over the disposition of the property. They didn't handle the listing. They didn't handle the removal of the property. There has been no control of the property by Cadillac, and that is a necessary element of conversion. Now, the appellant in their brief also said that there is a remaining breach of duty and acting in concert claims against Cadillac, all located within this paragraph 45 of their amended complaint, which is actually located under the account conversion and makes no clear claim of breach of duty or acting in concert. It's really unclear whether they're trying to allege a general breach of duty as in a negligent sense, which would be unsuccessful. Clearly, Cadillac, the attorneys for Bank One, is not going to owe a duty to Ralph May and Manitou Machinery, a potentially adverse party. Again, the appellants rely on this court's previous ruling, and this court did hold that there would be a duty to notify in order to show abandonment. Here, that's not what we're talking about. They're talking about a general duty. This court did not hold that Cadillac owed a general duty. So the appellant's arguments that the law of the case doctrine is finding here is simply incorrect, acting in concert. Again, this argument is based on a conclusion made in paragraph 45 that Cadillac knew that Devonshire would rely on its direction. This is pure speculation. There is no evidence that Cadillac knew or did not know anything, and more importantly, the affidavits completely contradict that there was any direction. Hernandez from Devonshire and Ernest Cadillac from Cadillac & Associates state there was no direction given to Devonshire whatsoever. So how Cadillac could have known that Devonshire would listen to them is pure speculation. So as for the breach of duty and acting in concert, obviously these aren't going to be successful as independent claims. If the appellants are trying to make this claim to show that there was direct conversion by Cadillac, because they do say Cadillac is liable as a direct participant who was responsible for the decision on the disposition of the personal property, again, this isn't true. An element of conversion is dominion or control of the property by the defendant. Here, it's been established by affidavits, and it has not been contradicted by anything said by the appellant, that Cadillac had no dominion or control over this property. Now, the next step they go and say, well, maybe you didn't have this directly, but you had it as an agency relationship because Devonshire was your agent. Again, the facts relied on by the plaintiffs to make this statement are incorrect. This referral by Hernandez did not happen. Instead, Ralph May has testified he first spoke with Cadillac, then with Hernandez. So clearly referral didn't happen. He says that he called Cadillac by finding their name on a piece of paper his daughter gave him, not because Frank Hernandez told him to call Cadillac. Now, at the trial level here, the trial court ruled in favor of the defendant because it found that abandonment was a defense to any claim of conversion. That was actually what they ruled on for Bank 1, which would apply here. I mean, if abandonment occurs, then right. I mean, if Bank 1 wins, we win too. But also, even if Bank 1 weren't to win, we should still win because we exercised no direction, no control. Devonshire was not an agent of Cadillac, so there could be no agency relationship here. So how did May hear about Devonshire? How did May hear about Devonshire? Well, they were the listing agent for the house that Devonshire Realty was. Right. So how he contacted Devonshire, I'm not sure. He never, well, he might have testified, but it was in no context of what Kate McKay from Cadillac told him. Devonshire was the listing agent for the property. I understand that. Oh, yeah, through Bank 1. But was May directed by Cadillac to Devonshire? There's no evidence of that at all. They're saying there was a referral from Devonshire to Cadillac, which is false. Also, a lot of these conversations that are brought up again and again between these various people at Cadillac and Devonshire, I mean, just because Kate McKay called Devonshire to get a sense of what was going on, that doesn't establish an agency relationship. I mean, your point is there was no proper evidence of agency or control relating between Codelus and Devonshire. Correct. I mean, when you look at the essential facts, is what your argument is. Correct. Showing that there was no dominion or control and necessarily element. Thank you. You focused on the issue of the first appeal abandonment. There cannot be abandonment. They said they had the property on April 18, 2001. Ralph May demanded it. Their duty is to give it to them. If not, it's a theft. Conversion's a nice word for it, but if you have someone else's property, they demand that you have to give it to them. And Bank 1 knew of that because McKay reported it to Bank 1, and so did Devonshire. Justice Wright, there was this talk about landlord-tenant, and you dissented to Justice O'Brien. I'm sorry, Justice Wright, I think it was. Maybe it was. I'm sorry. It was me. Yeah. I'm sorry. I got you confused. Sixty years old this year, so he's catching up with me. I apologize. But landlord-tenants, landlords have a lead on the personal property in the tenant's premises. And so certainly a landlord has a possessory interest in the tenant's personal property. Mortgagees do not have a lead on personal property in the mortgage premises of the real estate. They have no lien rights. So the landlord-tenant cases, I agree with you, that the landlord could take possession and do with what they want. But this is not a landlord-tenant case. This is a mortgage, and the property's owned by the mortgage owner, the personal property. As to abandonment, there can't be abandonment because the property existed on April 18th and he demanded it. Now, had other things happened, nice theoretical question, what the liabilities would be. But they didn't have it. They had the property and they didn't give it to me. Now, if only it were as clear as Cadilla said, Nancy Koch said that their action, she said in an e-mail, the one that Ralph May retrieved some seven years later, and it's in the record, she says, any action taken on the personal property was done at the direction of Bank One's attorneys. Now, that's what I alleged in paragraph 45, the exact language. So I alleged that Devonshire would follow Bank One's or attorney's direction, Cadilla's. And you sustain that as stating a cause of action. Now, I don't understand. But sustaining a cause of action and proving a case are two different matters, aren't they? Doesn't that say exactly what I alleged? I said that Devonshire would follow Cadilla's directions. And I've got evidence in the direct form of a statement from the Devonshire agent that, yes, we followed their direction. I don't know what else I can do, Justice. I mean, that's about the best proof I've ever seen. It's exactly what I alleged verbatim. I agree there might be difference in proof, but not there. I clearly showed it. Also, the other problem procedurally was they were confident on that theory. They didn't even move for summary judgment on it. So I don't know why we can talk it. We can't really even be talking about it because they just said there's no agency there for a summary judgment. Judge DeBicke said, well, you didn't plead these other things in separate counts. I'm ignoring it. You reversed for a failure to state a cause of action. They did not challenge paragraph 45. And so paragraph 45 was the three alternative forms of liabilities in the case. I cited the statute, too, and he ignored it and said that you can plead different alternatives, which is exactly what I did, not knowing. There's some mention of a lawyer named Tom Kelly. Well, if Tom Kelly's the lawyer responsible for this, why has Cadillus even taken the call? And the other thing I'd say is to the agency, clearly it's a question of fact here as to the relationship with the differing versions. But it really comes back to direction and control. Devin Sharrer admits it. Cadillus had that. If there is an abandonment, that ends the case against both defendants. But how can there be an abandonment when the property still exists and you ask for it? No, I'm saying if there was abandonment, doesn't that end the case against both defendants? Well, if there were, but how can there be when the property still exists and is being held for you and you ask for it and they don't give it to you? I would agree that abandonment would be a defense against both defendants, of course. But you can't abandon property even if you are negligent and it's still there and you want it back. You have a forfeited title. There's no duty to diligently maintain. You may lose it, and if they've destroyed it, then you've abandoned it and you're stuck. But if you find it and say, give it to me, you can't hold it back. Thank you very much, Justice. Good to see you again. Sorry, Justice. We will take this case under advisement and render a ruling with dispatch, and we will adjourn now for a new panel.